**Bill WILKERSON, Plaintiff–Appellant,**

**v.**

**COLUMBUS SEPARATE SCHOOL DISTRICT, et al., Defendants– Appellees.**

**No. 92–7327, Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

March 15, 1993.

Jim Waide, Tupelo, MS, for plaintiff-appellant.

D. Collier Graham, Jr., Shell, Buford, Bufkin, Callicutt & Perry, Jackson, MS, W. David Dunn, Dunn, Webb, McEwen & Studdard, Columbus, MS, for defendants-appellees.

Before POLITZ, Chief Judge, KING and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

Bill Wilkerson appeals an adverse summary judgment dismissing his Title VII and 42 U.S.C. § 1983 claims that the nonrenewal of his coaching and teaching contract was the result of racial discrimination. Concluding that Wilkerson has presented sufficient evidence to create a genuine issue of material fact with respect to the defendant school district we affirm in part, vacate in part, and remand.

### Background

Freddie Jones, an African–American teacher in the Columbus Separate School District, was denied renewal of his contract for the 1989–90 school year because of allegations that he became intoxicated at a public function and conducted himself in an unprofessional manner, including the sexual propositioning of a female student. The two African–American members of the school board, Tommy Prude and Mary Nor-

wood, voted for renewal because Jones denied the allegations and they considered the evidence against him to be weak.

Shortly after Jones's termination, Wilkerson, the white head football coach at the district's Lee High School, was reprimanded for conduct occurring during an overnight outing of a group of students at a tennis tournament. Wilkerson was assigned to escort the students along with two tennis coaches. The reprimand concerned two incidents: (1) he drank two cans of beer alone in his hotel room late one evening after the students were in their rooms; and (2) he left three students, aged 14, 15, and 16, watching the tennis matches while he returned to the hotel to extend their reservations because of weather-related delays.

Wilkerson's contract expired a few months later. Superintendent Thomas Cooley recommended that the school board not renew Wilkerson's contract because of the tennis tournament incidents. A hearing was held under Miss.Code Ann. § 37-9-101 *et seq.*, and the hearing officer concluded that nonrenewal was "an excessive punishment" but not contrary to law. The school board then voted 3 to 2 against renewal. Prude and Norwood voted against renewal, joined by one white board member who was opposed to the use of alcohol under any and all circumstances.

Wilkerson filed suit against the school district, Prude, Norwood, and Cooley, claiming a violation of the fourteenth amendment, actionable under 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964.[1] On defendants' motion the district court granted summary judgment, finding that Wilkerson had failed to raise a factual issue as to discriminatory motivation. Wilkerson timely appealed.

*Analysis*

We review a ruling on a summary judgment motion under the same standard as that applied by the district court, affirming only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.[2] Our job is not to weigh the evidence in place of the trier of fact but to determine whether there is sufficient evidence for a trier of fact to find in the nonmovant's favor.[3] In undertaking this task, we examine the record *de novo*, reviewing the evidence and any inference to be drawn therefrom in the light most favorable to the nonmoving party.[4] Applying this standard, we find the record does not permit summary judgment for the school district.

■ *McDonnell Douglas Corp. v. Green*[5] requires a plaintiff relying on circumstantial evidence of illicit motive to prove a *prima facie* case before the defendant must proffer a legitimate reason for its action. Defendants maintain that Wilkerson's case fails at this initial step because he offered no evidence that black employees were disciplined less harshly than he.[6] The district court bypassed this threshold inquiry, finding it unhelpful on the particular facts, and proceeded directly to the question of discrimination *vel non*. We perceive the case at bar to be a mixed motive case that must follow the method of proof set forth in *Price Waterhouse v. Hopkins*.[7] Accordingly, like the district court, we first consider whether Wilkerson presented sufficient evidence for a reasonable jury to find that racial animus was a motivating factor in the termination decision. We find sufficient evidence of this as relates to the school district, but not with respect to the individual defendants.

■ Wilkerson testified in his deposition that Jean Bigelow, school board president,

**1.** 42 U.S.C. § 2000e *et seq.*

**2.** Fed.R.Civ.P. 56(c); *Yeager v. City of McGregor,* 980 F.2d 337 (5th Cir.1993).

**3.** *Amburgey v. Corhart Refractories Corp., Inc.,* 936 F.2d 805 (5th Cir.1991).

**4.** *Yeager.*

**5.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**6.** *See E.E.O.C. v. Brown & Root, Inc.,* 688 F.2d 338 (5th Cir.1982).

**7.** 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).

told him that the matter of Wilkerson's discipline had "become nothing but a racial issue." James Conrad, an assistant superintendent, told him the same. Howell Mims, principal of Lee High School, stated in an affidavit: "During several conversations with Mr. Cooley, we agreed that Mr. Wilkerson would not have been a concern had it not been for the firing of Mr. Freddie Jones...." Cooley testified at the administrative hearing that, while the black board members felt that Jones had not been treated fairly, there was conversation that Wilkerson had to be let go so that he would be treated the same as Jones. According to Wilkerson, Bigelow told him that when one board member suggested dropping the Wilkerson matter, Prude had objected, saying "You got the black, now you are going to get the white." Norwood stated in her deposition that she had advocated Wilkerson's dismissal because "what is fair for the goose is fair for the gander."

■■■ Before evaluating the import of these statements, we must first decide whether this is competent summary judgment evidence. Certain of the statements consist of opinions by highly-placed individuals which are deemed competent evidence.[8] Other statements contain at least one level of hearsay with respect to the individual defendants and thus may not be considered against them.[9] The only statements surviving this scrutiny with respect to the individual defendants are Cooley's testimony about the conversation that Wilkerson had to be terminated so that he would be treated the same as Jones,[10] and

Norwood's admission that she advocated Wilkerson's nonrenewal because "what is fair for the goose is fair for the gander." All the statements, however, may be considered against the defendant school district because the declarants were its agents.[11]

We conclude that Wilkerson presented sufficient direct evidence in support of his claim against the school district to create a question for the factfinder whether race played a motivating role in the decision not to renew his contract. It is apparent that the board considered in making its decision that Wilkerson was white and that an African–American recently had been dismissed. Defendants argue, and the district court agreed, that this consideration of race was benign: the board considered race only to assure that persons of all races were treated equally. Such evidence is pertinent to the school district's defense that it would have refused to renew Wilkerson's contract had racial considerations not played a role. Under *Price Waterhouse*, the district bears the burden of proof on this issue. Although the district presented sufficient evidence to permit a favorable finding on this affirmative defense, for summary judgment purposes it is not enough for the evidence does not compel such a finding.[12] This is particularly true in light of Wilkerson's circumstantial evidence of discrimination, most notably, the differences between his conduct and that of which Jones was accused, and Cooley's testimony that he allowed Wilkerson to escort a group of students on a golfing excursion *after* the

8. *Hansard v. Pepsi–Cola Metropolitan Bottling Co., Inc.,* 865 F.2d 1461 (5th Cir.), *cert. denied,* 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989).

9. *Cormier v. Pennzoil Exploration & Production Co.,* 969 F.2d 1559 (5th Cir.1992); *Huddleston v. Herman & MacLean,* 650 F.2d 815 (5th Cir.), *modifying* 640 F.2d 534 (1981), *aff'd in part, rev'd in part on other grounds,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983).

10. Disregarding the truth of the matters asserted, the occurrence of the conversation is non-hearsay with respect to what Cooley heard and hence was evidentiary of his state of mind in

deciding not to recommend Wilkerson's renewal.

11. Fed.R.Evid. 801(d)(2)(D), 805; *Huddleston, supra.* For example, Wilkerson's deposition testimony that Bigelow had told him that Prude had said "You got the black, now you are going to get the white" would be double hearsay but for the fact that both Prude and Bigelow were agents of the school district.

12. *Cf. Marsden v. Patane,* 380 F.2d 489 (5th Cir.1967) (summary judgment for plaintiff only appropriate where reasonable persons could not infer that plaintiff's *prima facie* showing has been rebutted).

fateful tennis tournament.[13] Accordingly, summary judgment in favor of the school district was inappropriate.

 We reach a different conclusion, however, with respect to the claims against Prude, Norwood, and Cooley in their individual capacities.[14] Accordingly, we affirm the grant of summary judgment as to Cooley, Prude, and Norwood in their individual capacities, cautioning that our decision does not bar a factual finding that Prude and Norwood harbored racial animus, and vacate and remand as respects the school district.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.

---

13. Of course the relevant inquiry is not whether Wilkerson's conduct was serious enough to warrant termination or as bad as that of which Jones was accused but, rather, whether the board members truly believed it was. The reasonableness of such a belief, however, is probative of whether they actually maintained that belief. *Texas Dept. of Community Affairs v.* *Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

14. The official capacity suits in effect are suits against the school district. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).