POLITZ, Chief Judge:
Sharon S. Dupre, individually and as natural tutrix of the minor Beau Nicholas Dupre, appeals an adverse summary judgment dismissing their claims against Chevron U.S.A., Inc. for damages resulting from the death of Russell P. Dupre, their husband and father, respectively. For the reasons assigned, we vacate and remand.

Background

Russell Dupre, a driller employed by Sun-downer Offshore Services, Inc., was killed while working on Chevron’s outer continental shelf platform located off the coast of Louisiana. Sundowner contracted with Chevron to install a drilling rig on Chevron’s platform and to perform workover operations on its wells. Chevron reserved and exercised its right to approve Sundowner’s rig installation. The platform revision resulting from installation of Sundowner’s rig could only be accomplished with the specific permission of Chevron. This permission was given.
Under the Chevron-approved plan Sun-downer placed its rig on the outer edge of the platform with a portion extending beyond the brink of the platform and over the sea. The Sundowner rig stood approximately 21 *156 feet above the drilling deck of Chevron’s platform and it was composed of several component parts. A traction motor blower sat atop' the traction motor which was housed on a drilling skid located well above the rig rotary table and platform floor.
Guardrails protected the perimeter of Chevron’s platform. The addition of Sun-downer’s rig, which added a workspace above the rails and over the edge of the platform, markedly changed the dynamics of this area of Chevron’s platform. No guardrails or other protective device were built around the outer edges of the elevated Sundowner rig. None were placed around the traction motor at the top of the rig. Access to the traction motor, which required regular maintenance and inspection, was hampered by its limited work area and the outboard location of its service port. Chevron’s safety inspectors checked the rig for regulatory and safety compliance but did not comment on any dangers involved in the rig configuration.
One month after installation of the rig, Russell Dupre and Johxiny Walker, a fellow Sundowner employee, were instructed to climb to the top of the rig, remove the blower motor, and inspect the inside of the traction motor. The traction motor had begun smoking and operations could not resume until it was repaired. Dupre and Walker unbolted the blower motor but could not pry it loose. They then rocked the motor back and forth in order to loosen it. The motor suddenly broke free and fell toward the outboard side of the rig. Dupre lost his balance and was pulled or fell off the structure, falling to his death in the sea.
Sharon Dupre, individually and in her representative capacity, filed suit against Chevron alleging negligence and strict liability.[1] The district court .granted summary judgment to Chevron, considering only vicarious liability principles. Sharon Dupre timely appeals, focusing on her negligence claim under Louisiana Civil Code article 2315.

Analysis

We review grants of summary judgment de novo, applying the same standard as that applied by the district court.[2] Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[3] Applying Louisiana law[4] we find summary judgment inappropriate. Sharon Dupre filed a claim against Chevron alleging that it negligently and directly caused her husband’s death. She did not merely assert a vicarious liability claim; the district court erred in so treating her complaint.[5] Concluding that Chevron owed a duty to Russell Dupre under Louisiana Civil Code article 2315, we must vacate and remand for further proceedings.[6]
Article 2315 provides that “[ejvery act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.”[7] In determining “fault,” Louisiana courts apply a duty-risk analysis composed of three parts:
(1) Was the defendant’s conduct a cause-in-fact of the harm? .
(2) Was a duty imposed on the defendant by a general rule of law to protect this plaintiff from this type of harm arising in this manner?
*157 (3) Was that duty breached?
In Louisiana the existence of a duty and its scope are questions of law.[8] Duty varies depending on the facts, circumstances, and context of each ease[9] and is limited by the particular risk, harm, and plaintiff involved.[10] On the facts presented in this case, we find that a duty existed.
As a general rule, “the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm.”[11] This duty extends to employees of independent contractors, for whose benefit the owner must take reasonable steps to ensure a safe working environment.[12] Chevron owed a duty to Russell Dupre and other workers aboard its platform to ensure that the platform was reasonably safe. As demonstrated by the plethora of regulations,[13] work aboard an offshore platform is precarious at best. Slipping and losing one’s balance, a not unusual occurrence on oil-producing rigs, may become life threatening when the proper safety mechanisms are not in place. A broken ramp or a missing rail may become the cause of severe injury or death. Such safety features are required for the precise purpose of preventing undue consequences of falls which may end abruptly in the sea hundreds of feet below.
Sharon Dupre asserts that Chevron neglected certain regulations and that this was the cause of her husband’s death.. 33 C.F.R. § 142.4 provides that holders of leases on the outer continental shelf “shall ensure that all places of employment ... are maintained in compliance with workplace safety and health regulations ... and, in addition, free from recognized hazards.”[14] Recognized hazards include ; conditions “[generally known among persons in the affected industry as causing or likely to cause death or serious physical harm to persons exposed” and conditions “[r]outinely controlled in the affected industry.”[15] Section 143.110 controls the placement of guardrails, explaining that “[ejxcept for ... areas not normally occupied, the unprotected perimeter of all floor or deck areas and openings shall be rimmed with guards and rails or wire mesh fence.”[16] The American Petroleum Institute further requires that “[p]rior to commencing rig-up operations, the planned arrangement of all equipment to be placed on the location should be reviewed to eliminate potentially hazardous conditions.”[17]
The summary judgment record contains expert testimony to the effect that the set-up and placement of the Sundowner rig on Chevron’s platform created a recognized hazard. According to this testimony the rig’s placement on the edge of the platform, coupled with its insufficient work area and lack of guardrails around the traction motor, created a danger to the workers required to service the motor. Unlike the typical vicarious liability case in which the independent *158 contractor created the danger,[18] in this case Chevron specifically authorized any hazardous situation created when it expressly approved the plan submitted by Sundowner for the installation arid set-up of its rig.[19] Upon completion, as noted, this addition changed the dynamics of the platform workbase. With Chevron’s approval, certain of the rails around the platform became useless, their function of preventing undue consequences of accidental falls neutered, as the “normally occupied areas” of the platform in critical part became elevated beyond their reach. The platform, with its appropriate safety devices, was thus reconfigured into a new model, one which called for new measures to ensure safety in' the newly created normally occupied areas. Such additional safety features, like those on the' “old” platform, would have as their purpose the prevention of accidental injury to workers such as Russell Dupre — specifically, to prevent employees from falling overboard with resulting serious injury or death.
We thus conclude that Chevron had a duty to take reasonable steps to make and keep its platform safe for workers thereon. This duty included areas of its platform altered or modified with its knowledge and approval. Chevron had the duty of assuring that any modifications or additions it allowed to its platform would not contain recognizable hazards and that all normally pccupied areas, including any newly created normally occupied areas, would continue to be adequately protected.
We cannot say as a matter of law that Chevron did not breach this duty, therefore summary judgment in favor of Chevron1 was inappropriate. The question is a factual one; further proceedings aré required.
The judgment of the district court is VACATED and the matter is REMANDED for further proceedings consistent herewith.

. Dupre also sued I.M.I. Engineering Co., the manufacturer of the rig, who was released on ..summary judgment. That judgment has not been appealed.

. Wilkerson v. Columbus Separate School Dist., 985 F.2d 815 (5th Cir.1993).

. Id.

. The Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331 et seq., extends the law of the adjacent state, which becomes the law of the United States, to actions arising from injuries on outer continental shelf platforms.

. See Seneca v. Phillips Petroleum Co., 963 F.2d 762 (5th Cir.1992) (distinguishing claims for direct liability from claims based on vicarious liability).

. The dissent suggests that we are here deciding the issue of liability. We do not. Our focus is on Chevron's duty separate and apart from vicarious liability. In that regard we note that vicarious liability was the issue before the court a quo and was, the issue in many of the cases cited in the dissent. The factual determination of liability remains for the trier-of-fact.

. La.Civ.Code art. 2315.

. Mundy v. Dep't of Health and Human Resources, 620 So.2d 811 (La.1993); see also Ellison v. Conoco, Inc., 950 F.2d 1196 (5th Cir.1992), cert. denied, - U.S. -, 113 S.Ct. 3003, 125 L.Ed.2d 695 (1993).

. Roberts v. Benoit, 605 So.2d 1032 (La.1992); see also Ellison; Owen v. Kerr-McGee Corp., 698 F.2d 236 (5th Cir.1983); Bourg v. Texaco Oil Co., Inc., 578 F.2d 1117 (5th Cir.1978).

. Roberts; see also Ellison.

. Mundy, 620 So.2d at 813; see also Owen, 698 F.2d at 239.

. Boudreaux v. Exxon Co., U.S.A., 451 So.2d 85 (La.App.), writ denied, 458 So.2d 119 (La.1984); Stoute v. Mobil Oil Corp., 297 So.2d 276 (La.App.), writ denied, 300 So.2d 839 (La.1974); see also Bourg.

. Although the violation of these regulations does not constitute negligence per se, they may be relevant in the establishment of the standard of care owed by a particular defendant to a particular plaintiff. Romero v. Mobil Exploration and Producing North America, Inc., 939 F.2d 307 (5th Cir.1991).

. 33 C.F.R. § 142.4(a).

. 33 C.F.R. § 142.4(c)(l)(2).

. 33 C.F.R. § 143.110(a).

. American Petroleum Institute: Recommended Practice for Occupational Safely for Oil and Gas Well Drilling and Servicing Operations (RP 54) 5.3.1.

. See Verrett v. Louisiana World Exposition, Inc., 503 So.2d 203 (La.App.), writ denied, 506 So.2d 1229 (La.1987); see also Robertson v. Arco Oil & Gas Co., 948 F.2d 132 (5th Cir.1991); Zepherin v. Conoco Oil Co., 884 F.2d 212 (5th Cir.1989).

. See, e.g., Ham v. Pennzoil Co., 869 F.2d 840 (5th Cir.1989), which suggests that knowledge or the express or implied approval of a dangerous situation implicates liability.