```
              IN THE UNITED STATES COURT OF APPEALS
                    FOR THE FIFTH CIRCUIT

                   _____

                        No. 00-30790
                      Summary Calendar
                   _____


PAUL BOURQUE, Individually and on behalf of Josh Bourque;
ROBERTA BOURQUE

                              Plaintiffs - Appellants

      v.

OLIN CORP; ET AL

                              Defendants

OLIN CORP; LYONDELL CHEMICAL WORLDWIDE INC; LYONDELL
CHEMICAL CO

                              Defendants - Appellees



                   _____

                        No. 00-31130
                      Summary Calendar
                   _____


PAUL BOURQUE, on behalf of Josh Bourque; ROBERTA BOURQUE

                              Plaintiffs - Appellants
v.

OLIN CORP; ET AL

                              Defendants

BIO-LABS INC

                              Defendant - Appellee



_____

         Appeals from the United States District Court
```

April 10, 2001

Before KING, Chief Judge, and WEINER and DENNIS, Circuit Judges.

PER CURIAM:[*]

In this consolidated appeal, Plaintiffs-Appellants appeal from the district court's grant of summary judgment in favor of Defendants-Appellees. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant-Appellee Lyondell Chemical Company ("Lyondell") operates a chemical plant on its property in Westlake, Louisiana.[1] At its Westlake facility, Lyondell produces, among other things, toluene diisocyanate ("TDI"). Phosgene is one of the components utilized in the production of TDI. Defendant-Appellee Bio-Labs, Inc. ("Bio-Labs"), a separate and distinct corporate entity from Lyondell, leases a section of the Westlake

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Defendant-Appellee Lyondell Chemical Company acquired a portion of the Westlake property, upon which its facility is situated, from Defendant-Appellee Olin Corporation. Originally, in 1996, ARCO Chemical Company ("ARCO") acquired the production facility from Olin Corporation under an Asset Purchase Agreement. Then, in July 1998, ARCO was acquired by Lyondell Chemical Company, with ARCO becoming a wholly owned subsidiary of Lyondell Chemical Company. ARCO's name was subsequently changed to Lyondell Chemical Worldwide, Inc., another named Defendant-Appellee herein. In December 1999, Lyondell Chemical Worldwide, Inc. was merged into Lyondell Chemical Company, with Lyondell Chemical Company being the surviving entity.

property from Defendant-Appellant Olin Corporation, on which Bio-Labs operates a chemical plant.

On September 2, 1998, Plaintiff-Appellant Paul Bourque, a meter technician for Entergy Corporation ("Entergy"), was installing and checking new electricity meters at Entergy's electrical substation, which was located on property adjacent to that owned by Lyondell. To reach these meters, however, Bourque was required to sign in at the Lyondell gate, located at the front of the property, and drive to the back area of the Lyondell facility.

After finishing his work at the substation, Bourque drove back to the front gate. Before reaching the gate, however, Bourque began to experience shortness of breath and a tightness in his chest. He began having difficulty breathing and was forced to stop his truck on the side of the road. Paramedics took him to the hospital, where he was treated for chemical asthma.

On August 25, 1999, Bourque sued Lyondell Chemical Company, Lyondell Worldwide, Inc., and Olin Corporation (hereinafter referred to collectively as the "Lyondell Defendants") in Louisiana state court, alleging that he has suffered "severe and disabling injuries and illnesses," including permanent lung damage, as a result of "his exposure to phosgene." On September 16, 1999, the Lyondell Defendants removed the action to federal court based on diversity.

On January 14, 2000, the Lyondell Defendants moved for summary judgment on the ground that there was no release of phosgene from the Lyondell facility on the day in question. On January 28, 2000, in conjunction with his response to the motion for summary judgment, Bourque filed a motion for leave to file an amended complaint, seeking to add Bio-Labs as a defendant and to include the allegation that a release of "bromine or other chemicals" caused his injuries. In his memorandum in support of his motion to continue, Bourque maintained that, on September 2, 1998, Bio-Labs reported a release of bromine from its tricholoroisocyanurate ("TCCA") unit. Moreover, Bourque asserted that he did not learn of the bromine release until December 9, 1999. The district court granted Bourque's motion to amend his complaint, adding Bio-Labs as a defendant.[2]

On April 19, 2000, the district court granted summary judgment in favor of the Lyondell Defendants, leaving only Bourque's claim against Bio-Labs. Then, on June 28, 2000, Bio-Labs moved for summary judgment, contending that because Bourque did not bring suit until seventeen months after he was injured, his claims are prescribed by Louisiana's twelve-month prescription statute for delictual actions. See LA. CIV. CODE

---

[2] The court also continued the summary judgment hearing for sixty days to allow the parties time to discover any additional evidence in support of their positions. During this time, Bourque failed to conduct further discovery.

4

ANN. art. 3492 (West 1994). The district court granted summary judgment in favor of Bio-Labs on August 10, 2000.

Bourque timely appealed each grant of summary judgment, and this court consolidated the appeals on September 25, 2000.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same criteria employed by the district court in the first instance. See Norman v. Apache Corp., 19 F.3d 1017, 1021 (5th Cir. 1994). "Summary judgment is proper only 'if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Turner v. Houma Mun. Fire & Police Civil Serv. Bd., 229 F.3d 478, 482 (5th Cir. 2000) (quoting FED. R. CIV. P. 56(c)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

"Courts of Appeals consider the evidence in the light most favorable to the nonmovant, yet the nonmovant may not rely on mere allegations in the pleadings; rather, the nonmovant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial." See Spivey v. Robertson, 197 F.3d 772, 774-75 (5th Cir. 1999) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986)), cert. denied, 120 S. Ct. 2659 (2000); see also

5

<u>Doe v. Dallas Indep. Sch. Dist.</u>, 220 F.3d 380, 383 (5th Cir. 2000) ("If the movant succeeds in making that showing, the nonmoving party must set forth specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings."), <u>cert. denied</u>, 121 S. Ct. 766 (2001).  After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted.  <u>See</u> FED. R. CIV. P. 56(c); <u>Celotex Corp.</u>, 477 U.S. at 322.

### III. THE LYONDELL DEFENDANTS

In ruling on the Lyondell Defendants' motion for summary judgment, the district court found that they adduced competent summary judgment evidence showing that there was no release of phosgene at the Lyondell facility on September 2, 1998.  The court concluded that, instead, the evidence demonstrated that there was a bromine release at the adjacent Bio-Labs plant, which was not owned, managed, or operated by the Lyondell Defendants.  Moreover, the court recognized the Lyondell Defendants' argument that the release at Bio-Labs was a "Code I" release, meaning that it was contained within the relevant Bio-Labs operating unit and did not spread to adjacent properties, such as Lyondell's.  Finding that Bourque "failed to submit competent summary judgment evidence that there was a release at the Lyondell plant or that any release on an adjoining plant affected [the Lyondell

6

Defendants'] employees," the court concluded that the Lyondell

Defendants owed no duty to Bourque.  Accordingly, the district

court granted summary judgment in favor of the Lyondell

Defendants.

On appeal, Bourque contends that the Lyondell Defendants

owed a duty to him to warn of the "dangerous condition at [the

Lyondell] facility."  Bourque maintains that the Lyondell

Defendants knew of the bromine release at the Bio-Labs facility

and failed to warn him of the danger.  Accordingly, Bourque

argues that the district court erred in finding that the Lyondell

Defendants had no duty to warn him of the danger.  We disagree.

Louisiana courts[3] have adopted a duty/risk analysis for

determining whether a party is liable for negligence.  See

Peterson v. Gibraltar Sav. & Loan, 98-1601, p.6 (La. 5/18/99),

733 So. 2d 1198, 1203.  Under Louisiana's duty/risk framework, in

evaluating whether a party is at fault, Louisiana courts

consider:

> (1) Was the defendant's conduct a cause-in-fact of the
> harm?
> (2) Was a duty imposed on the defendant by a general
> rule of law to protect this plaintiff from this type of
> harm arising in this manner?
> (3) Was the duty breached?

---

[3]   Because our jurisdiction is based upon diversity, we sit
as an Erie court.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78
(1938); see also C.P. Interests, Inc. v. Cal. Pools, Inc., 238
F.3d 690, 694 (5th Cir. 2001).

Dupre v. Chevron U.S.A., Inc., 20 F.3d 154, 156-57 (5th Cir. 1994).

In Louisiana, the existence of a duty and its scope are questions of law.  See id. at 157; see also Peterson, 98-1601 at p.7, 733 So. 2d at 1204; Mathieu v. Imperial Toy Corp., 94-0952, p.5 (La. 11/30/94), 646 So. 2d 318, 322.  The general rule is that "the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm."  Peterson, 98-1601 at p.7, 733 So. 2d at 1204; see also Dupre, 20 F.3d at 157.  The question whether a duty exists depends upon the facts and circumstances of each case, and the scope of that duty is "limited by the particular risk, harm, and plaintiff involved."  Dupre, 20 F.3d at 157.[4]  Because the scope of the Lyondell Defendants' duty to warn was defined by the particular risk of harm caused by a Code I bromine release, we conclude that the district court did not

_____

    [4]  In 1976, the Louisiana Supreme Court eliminated the common-law classifications of invitee, licensee, and trespasser. Cates v. Beauregard Elec. Coop., Inc., 328 So. 2d 367, 370 (La. 1976).  These classifications were replaced by the current duty/risk analysis.  See Shelton v. Aetna Cas. & Sur. Co., 334 So. 2d 406, 410 (La. 1976); see also Kramer v. Continental Cas. Co., 92-1131, p.14 (La. App. 3 Cir. 6/22/94), 641 So. 2d 557, 566 ("Thus, in the present case, we do not find it necessary to classify [the plaintiff] as an invitee or licensee, and instead examine the question of legal duty owed in light of the duty/risk formulation.").  As such, which classification best fits Bourque's purpose for being on Lyondell's property is irrelevant to this analysis.

err in finding that the Lyondell Defendants owed no duty to Bourque.

In the instant case, the summary judgment evidence reveals that on September 2, 1998, at 12:23 p.m., employees at the Lyondell facility were informed that the adjacent Bio-Labs facility issued a Code I bromine release notice. Five minutes later, at 12:28 p.m., Bio-Labs issued an "all clear" on the Code I bromine release. Kathy Kiestler, the Senior Industrial Hygienist at Lyondell, testified in an affidavit that a "Code I release" is a "release contained inside the . . . operating unit." As such, at the time of the incident, the Lyondell employees were aware that there was a release of bromine at the Bio-Labs plant and that it was contained within the TCCA unit located on Bio-Labs' property. Accordingly, the Lyondell Defendants argue that there was no risk of exposure to individuals within Lyondell's separate production facility.

After our review of the record, we conclude that Bourque has created no genuine issue of material fact for trial. Bourque has adduced no summary judgment evidence to show that a Code I bromine release notice would have alerted Lyondell to a risk at the Lyondell facility, nor does Bourque argue in his brief to this court that the Lyondell Defendants were aware of a possible risk of exposure to individuals at the Lyondell facility, such as would have triggered the Lyondell Defendants' duty to warn. Therefore, because the scope of the Lyondell Defendants' duty to

warn was limited to the particular risk of a Code I bromine release at another plant's facility, see Dupre, 20 F.3d at 157, and because there is no dispute that a Code I release means that such release is contained within that facility, we find that the summary judgment evidence shows that the Lyondell Defendants were not aware of a risk on their property. As such, the district court did not err in finding that the Lyondell Defendants had no duty to warn Bourque of the Code I bromine release at a separate and distinct facility. Accordingly, we conclude that the district court's grant of summary judgment in favor of the Lyondell Defendants was proper.

## IV. BIO-LABS

Bourque was injured on September 2, 1998. However, Bourque did not bring suit against Bio-Labs until January 28, 2000, almost seventeen months later. Finding that Bourque's claims against Bio-Labs were prescribed by Louisiana's twelve-month prescription statute for delictual actions, the district court granted summary judgment in Bio-Labs' favor. In his response to Bio-Labs' motion for summary judgment, Bourque argued that he filed a workers' compensation claim against his employer, Entergy, within the twelve-month prescription period, thereby tolling prescription.

The district court rejected this argument, reasoning that Bourque presented no competent evidence that he filed the

10

workers' compensation claim, that there was no evidence of solidary liability[5] between Entergy and Bio-Labs, and that Bourque's voluntary dismissal of his workers' compensation suit vitiated any interruption of prescription that might have occurred.

On appeal, Bourque contends that he did file a workers' compensation claim against Entergy, which he voluntarily dismissed on June 7, 1999, and that Entergy was solidarily liable with Bio-Labs. Bourque asserts that, accordingly, he had one year from the date of voluntary dismissal to file suit against Bio-Labs. Because he filed suit against Bio-Labs within that time, Bourque argues that his claims against Bio-Labs are not prescribed. Therefore, if Bourque had filed a suit in which Entergy made a general appearance before Bourque's voluntary dismissal, that suit could toll the prescription period.

Under Louisiana law, "[d]elictual actions . . . are subject to a liberative prescriptive period of one year which begins to run from the day injury or damage is sustained." Williams v.

---

[5]   A "solidary obligation" is "one where the obligors 'are obliged to the same thing, so that each may be compelled for the whole, and when payment by one exonerates the other toward the creditor.'" Williams v. Sewerage & Water Bd., 611 So. 2d 1383, 1387 (La. 1993) (quoting Hoefly v. Gov't Employees Ins. Co., 418 So. 2d 575, 576 (La. 1982); Lucero v. Burney Gear Co., 33,585, pp.2-3 (La. App. 2 Cir. 6/21/00), 764 So. 2d 181, 182-83 (finding, on the facts of the case, solidary liability of employer and third-party tortfeasor). "Suit against one solidary obligor interrupts prescription as to other solidary obligors." Younger v. Marshall Indus., Inc., 618 So. 2d 866, 868 (La. 1993).

<u>Sewerage & Water Bd.</u>, 611 So. 2d 1383, 1386 (La. 1993) (citing LA. CIV. CODE ANN. art. 3492). If, on the face of the complaint, it appears that prescription has run, the burden is on the plaintiff to demonstrate an interruption or suspension of the prescriptive period. <u>See</u> <u>Younger v, Marshall Indus., Inc.</u>, 618 So. 2d 866, 869 (La. 1993); <u>Lima v. Schmidt</u>, 595 So. 2d 624, 628 (La. 1992).

Louisiana law provides that "a suit timely filed against the employer for worker's compensation interrupt[s] prescription as to the subsequent claim against the third party tort-feasor for damages."[6] <u>Williams</u>, 611 So. 2d at 1390. Once such a suit is filed, interruption continues so long as the suit is pending. <u>See</u> LA. CIV. CODE ANN. art. 3463 (West supp. 2001).

Relying upon a recently amended Louisiana statute, the district court concluded that because Bourque voluntarily dismissed his workers' compensation claim against Entergy, there was no interruption of the prescriptive period. <u>See</u> LA. CIV. CODE ANN. art. 3463 (West supp. 2001) ("Interruption is considered never to have occurred if the plaintiff . . . voluntarily dismisses the action at any time either before the defendant has made any appearance of record or thereafter[.]"). Bourque contends that the district court erred by relying upon the amended statute because it was not in effect when he filed suit

---

[6] <u>See</u> <u>supra</u> note 5.

12

against Entergy.  Bourque asserts that, instead, the prior statute and its interpretive case law should apply to the instant case.  We need not decide which version of the statute applies to Bourque's claims, because even assuming arguendo that Bourque is correct, his claim still fails under the earlier version of the statute.

Before the 1999 amendment of Article 3643, it read: "Interruption is considered never to have occurred if the plaintiff . . . voluntarily dismisses . . . the suit[.]"  LA. CIV. CODE ANN. art. 3463 (West 1994).  During the time this version of Article 3463 was in effect, Louisiana courts interpreted the statute to apply only to those voluntary dismissals occurring prior to a general appearance by the defendant.  See Roger v. Estate of Moulton, 513 So. 2d 1126, 1133 (La. 1987); Herbert v. Cournoyer Oldsmobile-Cadillac GMC, Inc., 419 So. 2d 878, 881 (La. 1982); Jones v. Dep't of Transp. & Dev., 94 1908, pp.3-4 (La. App. 1 Cir. 6/30/95), 659 So. 2d 818, 820. In other words, if the plaintiff voluntarily dismisses the suit before the defendant has made a general appearance, the prescription period is not interrupted, and the plaintiff's claims will be prescribed within the twelve-month period.

Bourque alleges that Entergy made a general appearance in the workers' compensation lawsuit before it was voluntarily dismissed.  In his response to Bio-Labs' motion for summary judgment, Bourque produced evidence that Entergy was served with

13

notice of a mediation hearing in connection with the workers'
compensation suit and alleges that Entergy made a general
appearance in connection with the mediation hearing.  Bourque
fails, however, to provide this court with any evidentiary basis
to support this assertion.  While he did produce the mediation
notice, it does not indicate whether Entergy actually attended
the mediation hearing.  Indeed, the director of the Louisiana
Office of Workers' Compensation is required under Louisiana law
to set all workers' compensation matters for mediation within
fifteen days of a claim's filing.  See LA. REV. STAT. ANN.
§ 23:1310.3(B)(1) (West 1998).  Moreover, there is no indication
in the record regarding whether the mediation conference actually
took place — evidence that we conclude would be readily available
to Bourque.  See id. ("Within five days following the conference
the workers' compensation mediator shall issue a report stating
the results of the conference which shall be mailed to the
parties and the director.").

Bourque may not rely on the "mere allegation" that Entergy
made a general appearance in the workers' compensation suit to
toll the prescription period and thus defeat a motion for summary
judgment.  See Spivey v. Robertson, 197 F.3d 772, 774-75 (5th
Cir. 1999).  Bourque failed to present summary judgment evidence
to demonstrate a genuine issue of fact regarding whether Entergy
made a general appearance before he voluntarily dismissed his
workers' compensation suit.  Accordingly, we find that the

prescription period was not tolled, see <u>Doyle v. Mitsubishi Motor</u>

<u>Sales of Am., Inc.</u>, 99-0460, p.7 (La. App. 1 Cir. 3/31/00), 764

So. 2d 1041, 1045 ("The interruption of prescription resulting

from the filing of the suit is lost when the plaintiff

voluntarily dismisses the suit prior to trial."), and the

district court did not err in finding that Bourque's claims

against Bio-Labs were prescribed.[7]

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgments of the

district court, granting summary judgment in favor of all

defendants.

---

[7]  Because we find that Bourque failed to raise a genuine
issue of fact regarding whether Entergy made a general appearance
in the workers' compensation suit, it is unnecessary to determine
whether Entergy and Bio-Labs were solidarily liable.