# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20735

United States Court of Appeals
Fifth Circuit

**FILED**

June 9, 2017

Lyle W. Cayce
Clerk

JOSHUA MCCOY,

      Plaintiff - Appellant

v.

ENERGY XXI GOM, L.L.C.; WOOD GROUP USA, INCORPORATED; FLOW PETROLEUM SERVICES, INCORPORATED,

      Defendants - Appellees

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:15-CV-2286

---

Before DAVIS, JONES, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Joshua McCoy ("McCoy") appeals the district court's final judgment granting judgment as a matter of law in favor of Defendants-Appellees Energy XXI GOM, L.L.C. ("Energy") and Wood Group USA, Incorporated ("Wood Group"), and dismissing his claims against Defendant-Appellee Flow Petroleum Services, Incorporated ("Flow") for lack of personal

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20735

jurisdiction. For the reasons set forth below, we affirm the dismissal of Flow but otherwise reverse and remand.

## I. Background

This lawsuit arises out of an incident that occurred on or about May 27, 2015 on a fixed offshore platform, SMI 239D, located on the Outer Continental Shelf off the coast of Louisiana and owned by Energy. Wood Group was an operator on the platform and acted as an independent contractor for Energy. McCoy had been employed by Precision Crane & Hydraulics, a nonparty to this action, as a mechanic's helper for approximately eight months prior to the incident. One of his routine duties was to purge crane tanks, which involves opening a valve, draining fluid into a container (being careful not to spill into the ocean), and closing the valve.

McCoy had worked on a number of platforms, but he had only worked on SMI 239D a few times and had never worked on the crane tank at issue in the incident. He claims that on other platforms, Energy equipped crane tanks with ball valves and plumbing extending away from the tanks, which allowed him to drain the tanks easily through a hose using only his hand to open and close the ball valve. On the day of the incident, he was ordered to drain a crane tank on SMI 239D which had neither a ball valve nor plumbing. Instead, the tank had a hexagonal plug located at ground level, plus a workspace below the tank accessible by moving the grating panel adjacent to the plug. The movable grating panel sat flush against the tank, with a small cutout to give the plug clearance.

McCoy claims that to properly drain the crane tank on SMI 239D, he had to move the grating panel to the side, climb down into the area below the tank, place spill containment pads and a bucket below the tank, and use a heavy wrench to loosen the plug. He claims the plug was so tight it required him to

2

use a hammer and large pipe wrench to loosen it, then carefully monitor the flow of hydraulic fluid, all while standing below the tank. When he finished draining the tank, the grating panel, which he had placed above him on the adjacent grating, fell onto his shoulder and then his foot, injuring him. To get off the platform, McCoy claims that Energy and/or its agent required him to transfer to a crewboat via a simple rope swing over the ocean, rather than a safer basket transfer. He claims that in the course of that transfer, he exacerbated his foot injuries.

McCoy first sued Energy and Wood Group in Texas state court, asserting a number of negligence-based theories, including not only premises liability for failure to maintain and fix the unreasonably dangerous condition on the platform but also failing to take proper safety precautions, failing to warn of the dangerous condition, and forcing McCoy to use a rope swing when a safer transfer option was available. McCoy served his initial discovery with his state court petition.

Energy and Wood Group timely removed the case to the United States District Court for the Southern District of Texas under federal question jurisdiction, specifically the Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq*. ("OSCLA"). The day after removal, the district court entered an order effectively prohibiting discovery without court approval, allowing only the disclosure of the principal facts and documents supporting each party's case until such time as the court could fashion a management plan. Defendants-Appellees never had to answer McCoy's initial discovery.

Thereafter the district court denied most requests for discovery. It permitted only the deposition of McCoy; the disclosure by the defendants of certain documents pertaining to the specific crane tank at issue on SMI 239D; photographs by Energy showing "the grating moved onto adjacent grating, the wrench in different positions on the plug, and the removed plug, with

measurements"; and "[v]ideo [taken by Energy after the accident] of the steps necessary to drain the tank." At no point did the district court permit McCoy to take the deposition of any party, nor does it appear the court permitted discovery of the conditions on any other platform, or even discovery pertaining to other tanks on SMI 239D. The result is that the district court permitted narrow discovery on the specific work location at issue, as well as discovery on the identity of companies working on SMI 239D.

As a result of this limited discovery, the court allowed McCoy to amend his complaint to add a claim against Flow on the ground that Flow, as Energy's contractor, directly employed the "Person In Charge" who was present on the date of the accident and thus allegedly bore some responsibility for the safety conditions on the platform. Unlike Energy and Wood Group, which are both based out of Houston, Texas, Flow is based out of Lafayette, Louisiana, and allegedly has no contacts with Texas. Flow filed a motion to dismiss for lack of personal jurisdiction and improper venue, and McCoy filed a motion to transfer venue to the Western District of Louisiana, where venue would be proper as to all parties.

Soon thereafter, the district court specified in a management order that Energy "may move for judgment," and McCoy would have one week to respond. Both Energy and Wood Group filed motions for summary judgment, which McCoy opposed. All parties agreed that under OCSLA, Louisiana substantive law applies as the law of the state adjacent to the platform. McCoy objected to summary judgment because he was not allowed to conduct sufficient discovery.

As discussed in more detail below, the district court granted Defendants-Appellees' motion for summary judgment because it found that McCoy's "carelessness caused his injury. He will take nothing." The district court found that McCoy was entirely at fault with respect to his negligence and premises liability claims relating to the primary incident involving the grating panel and

his negligence claim relating to the rope swing transfer to the crewboat. The court also denied McCoy's requests for additional discovery; denied his motion to strike certain summary judgment evidence submitted by Energy and Wood Group; and dismissed Flow, implicitly denying McCoy's motion to transfer venue. The court entered a final judgment in favor of Energy and Wood Group and against McCoy, dismissing McCoy's claims against Flow. McCoy timely appealed, challenging essentially every part of the district court's opinion. We reverse and remand except with respect to the dismissal of Flow.

## II. Applicable Law

Because the district court failed to apply the summary judgment standard and cited almost no relevant substantive law in its opinion, it is helpful to briefly review those principles. Under Fed. R. Civ. P. 56, summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." We review the grant of summary judgment de novo.[1] "We must view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party."[2] "On summary judgment, . . . courts are precluded from weighing credibility."[3]

As noted above, all parties agree that Louisiana substantive law applies via OCSLA, most relevantly La. Civ. Code arts. 2315 (general negligence) and 2317.1 and 2322 (an owner or caretaker's liability for a defective thing or building, respectively). Article 2315, the cornerstone of Louisiana tort law, provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[4] Article 2317.1 provides:

---

[1] *Cox v. Wal-Mart Stores E., L.P.*, 755 F.3d 231, 233 (5th Cir. 2014).

[2] *Id.*

[3] *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 701 (5th Cir. 2014).

[4] La. Civ. Code Ann. art. 2315(A).

No. 16-20735

The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.[5]

Similarly, Article 2322 provides:

The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.[6]

Louisiana courts employ duty-risk analysis to determine liability for general negligence, and that analysis also informs cases under Articles 2317.1 and 2322:

Under this analysis, plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached. Under the duty-risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover.[7]

These factors are split between questions of fact and questions of law. In this case, McCoy alleges the crane tank posed an unreasonable risk of harm, especially compared to tanks on other platforms. In a case concerning whether

---

[5] La. Civ. Code Ann. art. 2317.1.

[6] La. Civ. Code Ann. art. 2322.

[7] *Syrie v. Schilhab*, 693 So. 2d 1173, 1176–77 (La. 1997) (citations omitted).

No. 16-20735

an elevator posed an unreasonable risk of harm, the Louisiana Supreme Court focused on the duty and breach elements, explaining the fact-finder's role in the inquiry:

> In order to avoid further overlap between the jury's role as fact-finder and the judge's role as lawgiver, we find the analytic framework for evaluating an unreasonable risk of harm is properly classified as a determination of whether a defendant breached a duty owed, rather than a determination of whether a duty is owed *ab initio*. It is axiomatic that the issue of whether a duty is owed is a question of law, and the issue of whether a defendant has breached a duty owed is a question of fact. The judge decides the former, and the fact-finder—judge or jury—decides the latter. . . . Because the determination of whether a defect is unreasonably dangerous necessarily involves a myriad of factual considerations, varying from case to case, the cost-benefit analysis employed by the fact-finder in making this determination is more properly associated with the breach, rather than the duty, element of our duty-risk analysis. Thus, while a defendant only has a duty to protect against unreasonable risks that are not obvious or apparent, **the fact-finder**, employing a risk-utility balancing test, **determines which risks are unreasonable and whether those risks pose an open and obvious hazard**. In other words, the fact-finder determines whether defendant has breached a duty to keep its property in a reasonably safe condition by failing to discover, obviate, or warn of a defect that presents an unreasonable risk of harm.[8]

Under Louisiana law, "[a]s a general rule, 'the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm.'"[9] As we have explained:

> This duty extends to employees of independent contractors, for whose benefit the owner must take reasonable steps to ensure a safe working environment. [The platform owner] owed a duty to

---

[8] *Broussard v. State ex rel. Office of State Bldgs.*, 113 So. 3d 175, 185 (La. 2013) (footnote and citations omitted; emphasis added).

[9] *Dupre v. Chevron U.S.A., Inc.*, 20 F.3d 154, 157 (5th Cir. 1994) (quoting *Mundy v. Dep't of Health & Human Res.*, 620 So. 2d 811, 813 (La. 1993)).

[the plaintiff] and other workers aboard its platform to ensure that the platform was reasonably safe. As demonstrated by the plethora of regulations, work aboard an offshore platform is precarious at best. Slipping and losing one's balance, a not unusual occurrence on oil-producing rigs, may become life threatening when the proper safety mechanisms are not in place. A broken ramp or a missing rail may become the cause of severe injury or death. Such safety features are required for the precise purpose of preventing undue consequences of falls which may end abruptly in the sea hundreds of feet below.[10]

Thus, the focus tends to be not on whether there was a duty in the first place but on whether a defendant breached the duty—a question of fact typically not suitable for summary judgment. As the Louisiana Supreme Court explained in *Broussard*, "the fact-finder . . . determines which risks are unreasonable and whether those risks pose an open and obvious hazard," i.e., "whether defendant has breached a duty to keep its property in a reasonably safe condition by failing to discover, obviate, or warn of a defect that presents an unreasonable risk of harm."[11] Thus, unless the summary judgment evidence shows truly undisputed material facts, summary judgment is not appropriate.

Finally, it is significant that Louisiana employs a pure comparative fault system under La. Civ. Code art. 2323:

In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, . . . . If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.[12]

---

[10] *Id.* (footnotes omitted).
[11] *Broussard*, 113 So. 3d at 185.
[12] La. Civ. Code Ann. art. 2323(A).

No. 16-20735

The Louisiana Supreme Court has explained that "[w]hen it adopted the comparative fault system, Louisiana abolished the contributory negligence feature, which completely barred the recovery of injury victims because of their fault, our tort law formerly embraced prior to 1980."[13] Because Louisiana law requires a full apportionment of fault among all potentially responsible parties, summary judgment is not appropriate if reasonable minds could disagree about the apportionment of fault.[14]

### III. Analysis

### A.     Negligence and Premises Liability

Regarding McCoy's negligence claims, the district court failed to apply the summary judgment standard or the applicable substantive law, as set out above. The district court did note that McCoy claims, as set out above, that the work area was unreasonably dangerous, that other crane tanks on other platforms are not unreasonably dangerous, and that he was made to swing on a rope to a crewboat instead of using a safer method. Nevertheless, the district court found that "McCoy's account and a review of the job site make plain: his carelessness was the cause of his accident." The district court reached its primary conclusion that McCoy was fully at fault by rejecting McCoy's deposition testimony:

> McCoy chose to move the grating. Rather than working below the tank, he could have stood on the grating adjacent to the tank. From there, he could have loosened the plug without moving the grating.

---

[13] *Landry v. Bellanger*, 851 So. 2d 943, 952–53 (La. 2003).

[14] *See, e.g.*, *Allen v. Integrated Health Servs., Inc.*, 743 So. 2d 804, 807 (La. Ct. App. 1999) ("Because we conclude that reasonable minds might differ as to the apportionment of fault under these circumstances, we hereby reverse the trial court's grant of partial summary judgment which assessed the defendants with all the fault for the accident."); *Grabowski v. Smith & Nephew, Inc.*, 149 So. 3d 899, 908 (La. Ct. App. 2014), *writ denied*, 159 So. 3d 1057 (La. 2015) (reversing the grant of summary judgment in favor of a medical sales representative defendant because the summary judgment record revealed a genuine dispute as to a material fact as to whether he was potentially at fault).

He says the plug was tight and required a "thick wrench." The wrench he used would have fit in the rectangular hole that cut into the grating. Further, he did not need a thick wrench to get leverage on a tight plug; he needed a long-handled wrench.

The court then posited a number of other ways McCoy might have purged the crane tank in a safe manner before concluding: "As a matter of law, his placement of the grating and working from below, not actions by Energy or Wood Group, caused his injuries. He will take nothing on his negligence claims." The court did not discuss the allegations McCoy made against Energy or Wood Group; it simply rejected them and found that McCoy was entirely liable for his injuries.

The district court's error is plain. The court's characterization of McCoy's testimony directly contradicts what McCoy said in his deposition, which is that Defendants-Appellees' own negligence and the platform's unreasonably dangerous conditions caused his injuries, at least in part. The only way to reach the conclusion the district court reached is to draw inferences against McCoy, the nonmovant, and/or to make a credibility determination—both strictly prohibited at the summary judgment stage. The district court allowed very limited discovery in this case, and the summary judgment still discloses major genuine disputes as to material facts. The rest of the court's opinion is infected with similar flaws, with the district court acting as a fact-finder rather than as a dispassionate arbiter of purely legal questions.

Next, the district court concluded that McCoy could not prevail on his premises liability claims because it found that there was nothing "about this tank and this plug that made them unreasonably dangerous." Specifically, the court found that "[b]ecause McCoy was experienced in his line of work and knew how to collect the fluid safely, it is not reasonable to expect that Energy and Wood Group would have foreseen this injury. Energy and Wood Group are not liable for McCoy's lack of caution and ordinary care." The district court

dismissed McCoy's arguments regarding the use of safer ball valves and plumbing on other tanks because it found that "[t]he existence of a different plug design—safer or easier—does not make the existing plug unreasonably dangerous." It also dismissed, without further discussion, McCoy's other arguments pertaining to the condition of the valve, as follows:

> McCoy says that there was a cover-up, that someone from Energy or Wood Group said the tank was dangerous and that someone said they would change this plug to a safer one. A decision to change this plug does not show that it was unsafe at the time McCoy used it and is not an admission of negligence. [footnote omitted]

With respect to this premises liability analysis, the district court did not cite to the applicable Louisiana Civil Code articles, and it cited to only a few inapposite cases in footnotes,[15] including a Texas Supreme Court case that does not apply to this action under Louisiana substantive law.

The court again erred by drawing inferences against McCoy, weighing his deposition testimony against countervailing evidence (or the court's own beliefs, as the case may be), and failing to acknowledge the existence of genuine disputes as to material facts on the premises liability issues.

Finally, and again without citing any law or even McCoy's allegations against Energy and Wood Group relating to the rope swing transfer, the

---

[15] The court cited to *Walker v. Union Oil Mill, Inc.*, 369 So. 2d 1043 (La. 1979), which held that the owner of a soybean storage facility was not liable for the death of a 15-year-old boy who died after becoming trapped in a storage tank because the boy was not an employee, and even if he had been, his duties would not have placed him in that danger. That is not applicable to the instant case, where McCoy was performing the task in the course of his job, and he contends the job site was unreasonably dangerous. The court also cited to *Henry v. Safeco Ins. Co.*, 498 So. 2d 1116 (La. Ct. App. 1986), *writ denied*, 501 So. 2d 235 (La. 1987), in which the appellate court overturned a jury verdict because it was undisputed that the plaintiff knew of the potential dangers posed by a "clearly visible" flooring condition and had been specifically warned by the homeowner about the slippery condition in the past. Here, whether the condition was open and obvious is very much a disputed question of fact. Indeed, the district court itself said that "it is not reasonable to expect that Energy and Wood Group would have foreseen this injury," cutting against any finding that the condition was open and obvious. Thus, neither of those cases supports the district court's conclusion.

district court found that McCoy was entirely at fault for the transfer to the crewboat because "McCoy knew his foot was injured. He was the best judge of his ability to use the rope. He did not tell the rig's crew that he needed a basket or helicopter. As a matter of law, his decision to swing, not actions by Energy or Wood Group, caused his additional injuries." The district court erred by completely discounting McCoy's own testimony, in violation of the summary judgment standard.

Had the district court simply applied the summary judgment standard and the applicable substantive law, it could not have granted summary judgment. Even on the limited record available under the court's restrictive discovery plan, it is plain that most of the material facts are genuinely disputed. Accordingly, we reverse the district court's grant of summary judgment in favor of Defendants-Appellees Energy and Wood Group and remand so this case may proceed.

**B.    Discovery Issues**

In its opinion, the district court dismissed McCoy's objections to the district court's refusal to allow more discovery by explaining that it had limited "discovery to information that is relevant to McCoy's claims and proportional to the needs of the case due to the cost and burden on Energy and Wood Group," and it found that "McCoy has claimed facts that are contradicted by physical facts and has elevated every trivial paperwork problem into danger or controversy." The district court did not specify an instance where McCoy's testimony was contradicted by other evidence or, more meaningfully, explain how conflicting evidence could be subject to summary judgment. The district court also rejected McCoy's motion to strike certain evidence submitted by Energy and Wood Group. On appeal, McCoy objects to both of these.

"We review a district court's decision to cut off discovery in order to rule on summary judgment for an abuse of discretion."[16] However, summary judgment is only appropriate "'*as long as the plaintiff has had a full opportunity to conduct discovery.*'"[17]

> Although the district court may cut off discovery when the record shows that further discovery is not likely to produce the facts needed to withstand the motion for summary judgment, [w]hen a party is not given a full and fair opportunity to discover information essential to its opposition to summary judgment, the limitation on discovery is reversible error.[18]

The district court abused its discretion in refusing to allow McCoy to conduct sufficient discovery in this case to support the allegations he has fairly raised, including the condition of crane tanks on other platforms, the full conditions on SMI 239D, the legal relationships among Defendants-Appellees, and so on. This error would be reversible on its own, but it is essentially moot because we are reversing and remanding for the reasons set out above. Even the limited summary judgment evidence the district court allowed already reveals genuine disputes as to the material facts. On remand, both McCoy and Defendants-Appellees deserve the opportunity to conduct discovery over the full scope of the claims and defenses at issue.

Because the district court's decision to admit certain evidence submitted by Defendants-Appellees does not affect the outcome of this appeal, and the district court will have an opportunity to address all parties' evidence at a later date, we deny McCoy's remaining discovery arguments as moot.

---

[16] *Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 332–33 (5th Cir. 2002) (citing *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 876 (5th Cir. 2000); *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1441 (5th Cir. 1993)).

[17] *Id.* at 833 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (emphasis in *Brown*)).

[18] *Id.* (citations and internal quotation marks removed).

**C.    Dismissal of Flow and McCoy's Motion to Transfer Venue**

Finally, the court dismissed Flow for lack of personal jurisdiction, implicitly denying McCoy's motion to transfer venue. On appeal, McCoy argues the district court abused its discretion under 28 U.S.C. §§ 1406(a) and 1631, which permit transfer to another district in the interests of justice to cure venue and jurisdictional defects, by failing to transfer the case to the Western District of Louisiana. We might be inclined to agree with McCoy that transfer to the Western District of Louisiana might be a wise choice because Louisiana law controls this case, the witnesses are in Louisiana, and all Defendants-Appellees, including Flow, would be subject to personal jurisdiction in Louisiana. Nevertheless, we cannot say that the district court abused its discretion by dismissing Flow without prejudice rather than transferring to a better venue. Accordingly, we affirm the dismissal of Flow.

## IV. Conclusion

For the reasons set out above, the district court's judgment dismissing Defendant-Appellee Flow without prejudice and implicitly denying McCoy's motion to transfer venue is AFFIRMED. Otherwise, the district court's judgment is REVERSED and REMANDED for further proceedings not inconsistent with this opinion.