United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 29, 2004**

Charles R. Fulbruge III
Clerk

REVISED MAY 3, 2004
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-30478
Summary Calendar

_____

SHERRY BURSZTAJN; ET AL.,

                              Plaintiffs,

SHERRY BURSZTAJN,

                              Plaintiff-Appellant,

        and

STATE OF LOUISIANA, on behalf of Louisiana State Office of Risk
Management, on behalf of the Office of the Governor,

                              Intervenor Plaintiff-Appellant,

versus

UNITED STATE OF AMERICA; UNITED STATES DEPARTMENT OF ARMY,

                              Defendants - Intervenor Defendant-Appellee.

--------------------
Appeals from the United States District Court
for the Western District of Louisiana

--------------------

Before JOLLY, WIENER, and PICKERING, Circuit Judges.

PER CURIAM:

    Plaintiff-Appellant Sherry Bursztajn, M.D., a professor at

Louisiana State University Medical Center in Shreveport ("LSUMC" or

"the hospital") at the time she was injured, appeals the district

court's grant of judgment as a matter of law ("jmol"), dismissing

her and her husband's personal injury claims advanced against the

United States Army (the "Army") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq. Likewise, Intervenor Plaintiff-Appellant the State of Louisiana (the "State") appeals the jmol's dismissal of its claims for recovery of workers' compensation benefits that it had paid to Dr. Bursztajn. Appellants contend that the district court's jmol was based on an incorrect legal premise, viz., that the Army owed Dr. Bursztajn no duty of care under the circumstances in which she was injured in the LSUMC parking lot as a result of being blown off her feet by the "rotor wash" of an Army medical evacuation helicopter as it was landing to deliver a patient to the hospital for emergency treatment. Finding no reversible error, we affirm.

## I.

## FACTS AND PROCEEDINGS

Dr. Bursztajn sued the Army under the FTCA for injuries she received when she allegedly was blown down in the hospital parking lot by the rotor wash of an Army helicopter in the act of landing at the hospital. The State intervened against the Army to recover workers' compensation benefits that it paid to Dr. Bursztajn.

The district court bifurcated the trial between the issues of liability and damages, conducting a bench trial on liability first. Trial testimony shows that (1) An Army helicopter, under the command of Chief Warrant Officer (CWO) Yingling, was actually being flown by its co-pilot, CWO Richardson, in the course of

2

transferring a head-trauma patient from another hospital to LSUMC. At the time that the aircraft was landing at LSUMC, Dr. Bursztajn was arriving for work and parking her car in a hospital parking lot near the helicopter landing pad (helipad). Dr. Bursztajn asserted that the force of the rotor wash (wind turbulence generated by a helicopter's whirling rotor blades) blew her to the ground, causing her injuries.

CWO Yingling testified that he was seated on the right side of the aircraft, facing forward, and that the co-pilot, Richardson, who was seated on the left, was in actual control of the aircraft. CWO Yingling stated that because the helipad at LSUMC is inside the "elbow" of a multi-story, L-shaped building, the landing required a "dead-end approach" which could not be aborted by simply applying power and flying straight ahead. CWO Yingling's visibility was restricted to looking only straight ahead and to his right. When the aircraft was approximately 65 feet above the ground, CWO Yingling spotted Dr. Bursztajn just as she was exiting her car, which was parked almost directly to his right, at the "3 o'clock" position. CWO Yingling further testified that by the time he saw Dr. Bursztajn getting out of her car, it was too late to abort the helicopter's landing without creating even greater rotor wash.

Unrebutted evidence at trial reveals that the Army had notified LSUMC that this helicopter would be arriving with a patient. Additional evidence shows that LSUMC police maintained a policy of controlling traffic in the hospital parking lot during

3

helicopter take-offs and landings, but that — despite prior notice of this helicopter's impending arrival — no LSUMC police were present to control the area when Dr. Bursztajn was injured.

At the close of the plaintiff's case in the liability phase of the bench trial, the district court granted the Army's motion for jmol. The court stated its findings and conclusions in an open-court colloquy with Dr. Bursztajn's attorney. Dr. Bursztajn and the State timely filed notices of appeal.

## II

## ANALYSIS

Dr. Bursztajn and the State insist that the district court committed legal error in concluding that the Army owed no duty of care to Dr. Bursztajn.[1] They also contend that the district court committed clear error by finding that the Army did not breach a duty to Dr. Bursztajn; and she alone argues that the district court committed legal error in assigning any portion of liability to the State.

The district court entered jmol in accordance with FED. R. CIV. P. 52(c), which provides that: "[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law[.]" FED. R. CIV. P. 52(c). "Findings of fact made

---

[1] Unless otherwise noted, Dr. Bursztajn's arguments are also those of the State.

4

pursuant to a Rule 52(c) judgment are reviewed only for clear error." <u>Samson v. Apollo Resources, Inc.</u>, 242 F.3d 629, 632 (5th Cir. 2001). "The trial court's conclusions of law, however, are reviewed *de novo*. <u>Id.</u> at 633. "The credibility determination of witnesses, including experts, is peculiarly within the province of the district court," and courts of appeal give "deference to the findings and credibility choices trial courts make with respect to expert testimony." <u>League of United Latin American Citizens #4552 (LULAC) v. Roscoe Indep. Sch. Dist.</u>, 123 F.3d 843, 846 (5th Cir. 1997).

A.  <u>FTCA and Applicable State Law</u>

"The FTCA authorizes civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred." <u>Quijano v. United States</u>, 325 F.3d 564, 567 (5th Cir. 2003) (citing 28 U.S.C. §§ 1346(b)(1), 2674). In this case, Louisiana law controls because the incident occurred there.

Articles 2315 and 2316 of the Louisiana Civil Code provide that every person is responsible for damages caused by his fault or negligence. <u>See</u> <u>Pitre v. Louisiana Tech Univ.</u>, 673 So.2d 585, 589 (La. 1996). "The relevant inquiries are:

5

(1) Was the conduct of which the plaintiff complains a cause-in-fact of the resulting harm?

(2) What, if any, duties were owed by the respective parties?

(3) Whether the requisite duties were breached?

(4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

(5) Were actual damages sustained?"

Id. at 589-90. "If the plaintiff fails to satisfy one of the elements of duty-risk, the defendant is not liable." Id. at 590; see Dupre v. Chevron U.S.A., Inc., 20 F.3d 154, 156-57 (5th Cir. 1994) (footnotes omitted).

The district court assumed that the rotor wash was a cause-in-fact of Dr. Bursztajn's fall and resulting injuries, but concluded that the Army did not breach any duty to her. The court did not reach the issues whether the particular injury was within the scope of a duty owed or whether Dr. Bursztajn suffered actual damages. We shall, therefore, address the existence and scope of any duty owed by the Army and, if so, whether the Army breached such duty.

1. "Duty" or "Breach":  Standard of Review

Under Louisiana law, the existence of a duty presents a question of law that "varies depending on the facts, circumstances, and context of each case and is limited by the particular risk, harm, and plaintiff involved." Dupre v. Chevron U.S.A., Inc., 20 F.3d 154, 157 (5th Cir. 1994). To determine whether a duty exists, a court is required to make a policy decision based on "various

6

moral, social, and economic factors." <u>Posecai v. Wal-Mart Stores, Inc.</u>, 752 So.2d 762, 766 (La. 1999); <u>Entrevia v. Hood</u>, 427 So.2d 1146, 1149-50 (La. 1983). We review this legal issue <u>de novo</u>. <u>See Samson</u>, 242 F.3d at 633.

"Whether a defendant has <u>breached</u> a duty is a question of fact." <u>Pinsonneault v. Merchants & Farmers Bank & Trust Co.</u>, 816 So. 2d 270, 278 (La. 2002) (emphasis added); <u>see also</u> <u>Boykin v. Louisiana Transit Co.</u>, 707 So.2d 1225, 1231 (La. 1998) ("Breach of duty is a question of fact, or a mixed question of law and fact, and the reviewing court must accord great deference to the facts found and the inferences drawn by the finder of fact."). This element concerns whether the defendants, "as ordinarily prudent persons under all the circumstances of their conduct," should have reasonably foreseen an injury to the plaintiff and whether the defendants "fail[ed] to exercise reasonable care to avoid the injury." <u>Nelson v. Washington Parish</u>, 805 F.2d 1236, 1239 (5th Cir. 1986). We review this factual finding for clear error. <u>See Samson</u>, 242 F.3d at 632. We will not set aside a district court's finding "unless, based upon the entire record, [it is] 'left with the definite and firm conviction that a mistake has been committed.'" <u>Southern Travel Club, Inc. v. Carnival Air Lines, Inc.</u>, 986 F.2d 125, 128-29 (5th Cir. 1993) (citation omitted). If the district court's assessment of the record is plausible on the whole, we will not reverse even though we might have weighed the evidence differently. <u>Id.</u> at 129 (citation omitted).

7

Dr. Bursztajn contends that, because the district court dismissed the case on the legal ground that the Army owed her "no duty," our review is de novo. The Army counters that, because that court based its jmol on the factual finding that the Army did not breach any duty, our review is for clear error. Our standard of review here is problematic because the district court combined the theoretically separate issues of "duty" and "breach" into one issue by not making clear the point at which its duty analysis stopped and its breach analysis began. We hasten to add that this conflation is understandable, as the Louisiana Supreme Court itself has had difficulty making a clear distinction between the questions of breach and duty. See Pitre, 673 So. 2d at 596 (Lemmon, J., concurring); see also McGuire v. New Orleans City Park Imp. Ass'n, 835 So.2d 416, 423 (La. 2003) (finding simultaneously that defendant exercised "reasonable care," owed no duty, and "did not breach a duty" where pedestrian was hit by errant golf ball); Kenney v. Cox, 652 So. 2d 992, 992 (La. 1995) (Dennis J., concurring) ("I feel that our jurisprudence has not clarified the distinction between the existence of a general duty of care (a legal question) and the 'legal cause' or 'duty/risk' question of the particular duty owed in a particular factual context (a mixed question of law and fact[.]").

The majority in Pitre rested its decision on the legal conclusion that the defendant "had no duty under the facts of this case" to warn the plaintiff about an obvious danger. Pitre, 673

8

So. 2d at 590. Two concurring justices stated, however, that the "pivotal issue in this case is not the existence of a duty, but the breach of duty." Id. at 596 (Lemmon, J., and Kimball, J, concurring for reasons assigned by Lemmon).

The two concurring justices in Pitre explained that the "duty" analysis "usually focuses on the general duty imposed upon the defendant by statute or rule of law" and that "a 'no duty' defense generally applies when there is a categorical rule excluding liability as to whole categories of claimants or of claims under any circumstances." Id. (emphasis added) (citing David W. Robertson et al, Cases and Materials on Torts 161 (1989)). The concurring justices added that "where the duty owed depends upon the circumstances of the particular case, analysis of the defendant's conduct should be done in terms of 'no liability' or 'no breach of duty.'" Id. (emphasis added). These two justices concluded that "the defendant had a duty to act reasonably in view of the foreseeable risks of danger" and that it did so because it was not required to provide additional warnings or safeguards. Id.

Dr. Bursztajn does not address this breach/duty dichotomy, contending instead that the district court wrongly held that the Army owed her no duty whatsoever. Dr. Bursztajn either misunderstands or misrepresents the district court's ruling. That court accepted that the pilot had a general duty of care to prevent rotor wash mishaps, then either (1) held that no further duty was owed; or (2) found that the pilots' actions did not breach a

9

general duty of reasonable care. We need not resolve the uncertainty as to the applicable standard of review, however, because the district court's judgment may be affirmed regardless of whether its ruling is deemed to rest on the legal issue of the existence of a particular duty or the factual issue whether the pilots actually breached a general duty.

## 2. Extent of Duty

None contest that the Army owed at least a general duty of reasonable care to avoid endangering persons on the ground. See 14 C.F.R. § 91.13,[2] prohibiting "reckless operation" of aircraft, and 14 C.F.R. § 91.119,[3] requiring safe helicopter operations at low altitudes). Dr. Bursztajn does not argue on appeal that the Army had any more specific duty than a general duty of care, conceding that neither the statutes nor the jurisprudence of Louisiana provides a more specific duty. Consequently, Dr. Burszstajn has waived the issue of a more specific duty by failing to brief it. See Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993) (issues not briefed are abandoned); American States Ins. Co. v. Bailey, 133 F.3d 363, 372 (5th Cir. 1998) (failure to provide legal or factual analysis of issue results in its waiver). Yet, even if the issue

---

[2] "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another." 14 C.F.R. § 91.13(a).

[3] "Helicopters may be operated at less than the minimums prescribed in paragraph (b) or (c) of this section if the operation is conducted without hazard to persons or property on the surface." 14 C.F.R. § 91.119(d).

10

were not waived, Dr. Bursztajn has failed to address any of the "moral, social, and economic" policy factors relevant to the jurisprudential creation of a duty. See Posecai, 752 So.2d at 766. Absent a showing of a more specific duty, the Army had only "'the obligation to conform to the standard of conduct of a reasonable man under like circumstances.'" See Ellison v. Conoco, Inc., 950 F.2d 1196, 1205 (5th Cir. 1992) (citation omitted; applying Louisiana law).

Regardless, any legal conclusion by the district court that the Army owed no more particular duty was not erroneous. The only evidence of any more particular duty came from Dr. Bursztajn's expert, Ross, who testified that the pilot should have performed a maneuver called a "high and low recon" which involves circling the landing area once or twice to ascertain that there are no potential hazards on the ground.

The district court concluded that the pilot did not have "a duty to do a low recon or a high recon or any other kind of recon." For, on cross-examination, Ross conceded that a manual for Army aviators did not require a high or low reconnaissance over a familiar area such as LSUMC where CWO Yingling had flown more than 70 times. Indeed, CWO Yingling testified that it was unnecessary, dangerous, and possibly even against federal regulations to circle over a congested area such as the part of the city where the hospital is located. And the district court found Ross's opinions incredible and "totally wrong," to which credibility determinations

11

we must give substantial deference. See LULAC #4552, 123 F.3d at 846. We conclude that the evidence adduced at trial does not establish that the Army pilots had a legal duty to perform a high or low level reconnaissance maneuver before landing at LSUMC.

Ross also testified that CWO Yingling should have seen Dr. Bursztajn sooner and thus been able to abort the landing when he saw her in the parking lot. Ross's opinion was based in part on vague speculation about the speed of the helicopter's approach, but it rested primarily on his discredited and disbelieved opinion that the pilot had a duty to make a reconnaissance maneuver before attempting to land. The district court concluded that the pilot did not have "any duty to see [Bursztajn] at any time sooner or to take any more evasive action." Despite the district court's use of the term "duty," we construe this ruling as a factual finding that the pilot did not breach his general duty of care by failing to notice Dr. Bursztajn sooner. Cf. Pitre, 673 So. 2d at 596 (noting that a warning was not "required" even while framing the issue in terms of breach of duty). Again, we owe considerable deference to the trial court's determination that Ross's opinions were incredible and "totally wrong." See LULAC #4552, 123 F.3d at 846. Dr. Bursztajn has not shown that the Army pilots had a specific duty to observe more than they did or to do so sooner than they did.

    3.  Breach of Duty

    Construing the district court's decision as a factual finding that the pilots did not breach a general duty of care, cf. Pitre, 673 So. 2d at 596, the question whether they breached the Army's duty to Dr. Bursztajn is resolved by determining whether the pilots acted reasonably under the circumstances. See Ellison, 950 F.2d at 1205 (referring to the obligation to conform to a reasonable person standard of conduct).  The district court's conclusion that the pilots acted  reasonably is not clearly erroneous. See Samson, 242 F.3d at 632.  As noted, Ross testified that the pilots breached the duty of care by failing to circle the area once or twice to be sure that there were no potential hazards, a maneuver that would have taken up to five minutes.  In addition to Ross's concession that the Army flight instruction manual does not require this maneuver under these circumstances, Ross also conceded that a pilot would not want to perform extra maneuvers with a critically injured patient aboard the helicopter on a medical evacuation mission. And, CWO Yingling testified, presumably credibly, that it would have been unreasonable to circle the hospital.  In light of this evidence, and giving deference to the district court's credibility determinations, there is no clear error.

    As noted, Ross also testified that CWO Yingling should have seen Dr. Bursztajn's car sooner and aborted the landing because she was a "potential pedestrian."  Ross admitted, however, that the pilot was not unreasonable for failing to see Dr. Bursztajn while

she was still in her car, and that there was nothing wrong or unreasonable about the helicopter's approach except that Dr. Bursztajn's car was in the parking lot. Ross conceded further that, during the approach, CWO Yingling was responsible for observing many things inside the aircraft in addition to looking outside for potential risks on the ground, and that by the time CWO Yingling did see Dr. Bursztajn exiting her car at the 3 o'clock position relative to the helicopter, it was too late for the landing to be aborted safely.

The trial court found that CWO Yingling was not in a position to have recognized any danger to Dr. Bursztajn until it was too late to do anything that would not have created an even greater danger. The court concluded that the pilots acted reasonably in light of the aircrew's duty to the patient, the crew, and the hospital. Once again, when viewed in the light of all the evidence and the deference due the district court's determination that Ross was not a credible expert, there was no clear error.

B. State Fault

The district court concluded that the LSUMC police we at fault for failing to secure the area of the helipad after receiving notice that a helicopter would be arriving. Dr. Bursztajn argues that the district court erred by assigning fault to the State because it is not subject to strict liability under Louisiana law.

Assessing fault to the State was not contrary to Louisiana law, which requires the assessment of the fault of each person who

14

contributes to the plaintiff's harm, regardless of the person's immunity from suit, including worker's compensation immunity. See LA. CIV. CODE ANN. art. 2323(A). The district court did not hold that LSUMC was strictly liable, only that LSUMC had an "obligation to watch out and post guards there to stop anyone from being injured by the approaching helicopter." This determination was supported by evidence that LSUMC (1) had been advised that this flight was on its way; (2) had a policy of controlling traffic in the parking lot during take-offs and landings; and failed to do so on the occasion that Dr. Bursztajn was injured. She does not contend — nor could she — that the Army breached any duty to advise LSUMC of the incoming flight, as the uncontradicted evidence shows that such advice was timely furnished. Dr. Bursztajn shows no legal or factual error with respect to the district court's conclusion that LSUMC was at fault.

C. Plaintiff's Fault

The court also concluded that Dr. Bursztajn herself could have and should have avoided the accident by simply staying inside her car when she heard the helicopter's approach. Dr. Bursztajn does not challenge this finding in her brief and is thus precluded from showing on appeal that it is erroneous.

D. Loss of Consortium

Dr. Bursztajn's husband, Stephen, sought damages for loss of consortium based on her injuries. As the Army was not at fault for

Dr. Bursztajn's injuries, however, her husband is not entitled to recover.

III

**CONCLUSION**

The factual findings of the district court are free of clear error. Its conclusions regarding the law of Louisiana applicable to those facts are likewise free of error. Inasmuch as the Army had no special duty of care to Dr. Bursztajn and did not breach its general duty to her, the district court's grant of jmol is, in all respects,

AFFIRMED.