EMILIO M. GARZA, Circuit Judge:
In these consolidated cases, plaintiffs Kent Bodin and Gordon Meyers appeal judgments on partial findings pursuant to Federal Rule of Civil Procedure 52(c) in favor of the defendant United States on their claims under the Federal Tort Claims Act (“FTCA”), 28 U.S.C. § 2671 et seq.
I
Bodin and Meyers were psychiatric patients of Dr. Gregory Vagshenian at an outpatient facility in Austin operated by the Department of Veterans Affairs (“VA”). The plaintiffs alleged and presented evidence that during regularly scheduled visits, Dr. Vagshenian performed illegal, inappropriate, and unnecessary physical examinations of their genitalia.[1] They claimed that the United States was liable for Dr. Vagshenian’s assault and malpractice and for failing to take steps to prevent Dr. Vagshenian’s actions.
After a bench trial, the district court dismissed the complaints for lack of subject matter jurisdiction. The district court observed that the United States has waived sovereign immunity for the tortious acts or omissions of its employees only when they occur within the scope of employment. 28 U.S.C. § 1346(b)(1). Applying Texas law, the district court found that Dr. Vagshenian was not acting within the scope of his employment when he committed the assaults. The district court reasoned that assaults on third persons fell outside the scope of authority granted to Dr. Vagshenian by the United States, particularly in light of the VA’s “zero-tolerance policy” against the abuse of patients. The district court also found:
Dr. Vagshenian assaulted Bodin and Meyers for his own personal gratification, and not, in any way, for the purpose of carrying out the Clinic’s treatment of patients.... Dr. Vagshenian’s assault of Bodin and Meyers was an expression of Dr. Vagshenian’s personal animosity. Thus, by assaulting Bodin and Meyers, Dr. Vagshenian turned away from treating patients, and instead he pursued his own sexual pleasure.[2]
The plaintiffs moved for a new trial or, in the alternative, to alter or amend the district court’s judgment. They argued that although the district court resolved any claim against the United States based on a theory of respondeat superior, it did not dispose of their claims that other VA employees were negligent when they failed to prevent the foreseeable acts of abuse. It was undisputed that Dr. Vagshenian’s coworkers were acting within the scope of their employment when they failed to prevent the assaults.
The district court denied the motion. It reasoned that, pursuant to 28 U.S.C. § 2680(h), the United States had not waived sovereign immunity for claims arising out of assault or battery. Although the plaintiffs’ claims sounded in negligence, the district court reasoned that they nevertheless arose out of the assault.
In this appeal, the plaintiffs argue that the district court erred in dismissing both their claims based on Dr. Vagshenian’s *484 wrongful conduct and Dr. Vagshenian’s coworkers’ wrongful failure to intervene.
II
Rule 52(c) provides that “[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party.” We review findings of fact made pursuant to Rule 52(c) for clear error and conclusions of law de novo. Bursztajn v. United States, 367 F.3d 485, 488-89 (5th Cir.2004).
Except when waived, the United States has sovereign immunity from suit, United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). This immunity deprives federal courts of subject matter jurisdiction. Chapa v. United States Dept. of Justice, 339 F.3d 388, 389 (5th Cir.2003). The FTCA waives that immunity for injury
caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
28 U.S.C. § 1346(b)(1). By its terms, this waiver of sovereign immunity only applies when the tortfeasor acts within the scope of his employment. But even if the tort-feasor’s conduct is within the scope of his government employment, the FTCA does not waive sovereign immunity for certain enumerated intentional torts, including “[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights” unless the government actor was an investigative or law enforcement officer. 28 U.S.C. § 2680(h).
A
The plaintiffs argue that the district court erred in dismissing their claims against the United States based on Dr. Vagshenian’s wrongful conduct. The district court did so because it found that Dr. Vagshenian was not acting within the scope of his employment when he committed the assaults. The issue of whether an employee is acting within the scope of his employment for purposes of the FTCA is governed by the law of the state in which the wrongful act occurred. Williams v. United States, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955); Rodriguez v. Sarabyn, 129 F.3d 760, 766 (5th Cir.1997).
Under Texas law, “an employee’s conduct is considered to fall within the scope of his employment if his actions were ‘(1) within the general authority given him; (2) in furtherance of the employer’s business; and (3) for the accomplishment of the object for which the employee was employed.’ ” Counts v. Guevara, 328 F.3d 212, 214 (5th Cir.2003) (quoting Williams v. United States, 71 F.3d 502, 506 (5th Cir.1995)).[3]
Where an “intentional tort is committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity, the employer may be liable.” GTE Southwest, Inc. v. Bruce, 998 S.W.2d 605, 618 (Tex.1999). “A principal is responsible for an unlawful act of his agent where the act is committed by the agent for the purpose of accomplishing *485 the mission entrusted to him by his principal.” Southwestern Bell Tel. Co. v. Wilson, 768 S.W.2d 755, 759 (Tex.App.—Corpus Christi 1988, writ denied) (Benavides, J.). “If the purpose of serving the master’s business actuates the servant to any appreciable extent his acts are within the scope of his employment.” Howard v. Am. Paper Stock Co., 523 S.W.2d 744, 747 (Tex.Civ.App.—Fort Worth 1975), reformed and aff'd, 528 S.W.2d 576 (Tex.1975). However, “when the servant turns aside, for however short a time, from the prosecution of the master’s work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone.” Tex. & P. Ry. Co. v. Hagenloh, 151 Tex. 191, 247 S.W.2d 236, 241 (1952) (quoting Galveston, H & S.A. Ry. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 1074 (1906)). “It is not ordinarily within the scope of a servant’s authority to commit an assault on a third person.” Id. at 239. The plaintiff bears the burden of proving that the employee acted for reasons other than personal animus. Garrett v. Great W. Distrib. Co. of Amarillo, 129 S.W.3d 797, 800 (Tex.App.—Amarillo 2004, pet. denied). This is generally a question of fact, not law. Arbelaez v. Just Brakes Corp., 149 S.W.3d 717, 720 (Tex.App.—Austin 2004, no pet.); see Houston Transit Co. v. Felder, 146 Tex. 428, 208 S.W.2d 880, 882 (1948) (holding that whether assault is within scope of employment is a factual question depending “in large measure” on the assailant’s motivation in acting).
Applying these principles in a similar case, Buck v. Blum, 130 S.W.3d 285 (Tex.App.—Houston [14th Dist.] 2004, no pet.), the Texas Court of Appeals affirmed a summary judgment for a hospital on a claim based on a doctor’s sexual assault of a patient. Buck testified that while performing a grip test, Dr. Yen placed his penis in her hand and told her to squeeze. Id. at 288. Buck argued that “since the procedure itself was part of the examination, and thus within the scope of Yen’s authority, the use of Yen’s body part was simply an inappropriate exercise of delegated authority.” Id. at 289. The court of appeals reasoned:
While it is undisputed Yen’s alleged action was inappropriate, it cannot be fathomed that the action was in furtherance of the employer’s business or for the accomplishment of an object for which he was employed. At the very moment Yen placed his body part in her hand (assuming he did), he was acting in his own prurient interest and ceased to be acting for the employer. The neurological examination at that point was only a pretense or a means for Yen’s inappropriate personal gratification. Nor can it be said the assault was so connected with and immediately arising out of Yen’s employment tasks as to merge the activities into one indivisible tort. A club bouncer has an inherently confrontational job that may well require physical force; whereas, neurology is not an inherently sexual profession and never requires the action allegedly perpetrated by Yen. As a matter of law, Yen’s alleged conduct did not arise out of the course and scope of his employment....
Id. at 289-90 (citations omitted).
The district court in this case did not hold as a matter of law that all sexual assaults by a psychiatrist are outside the scope of their employment. Instead, based on the testimony of the plaintiffs’ expert witness, the district court found as a matter of fact that Dr. Vagshenian’s sexual assaults were: 1) “not in furtherance of the VA’s business”; 2) “for his own personal gratification, and not, in any way for the purpose of carrying out the Clinic’s treatment of patients”; 3) “not for the *486 accomplishment of the object for which he was hired”; and 4) “an expression of Dr. Vagshenian’s personal animosity.” Under Texas law, a finding that Dr. Vagshenian’s conduct was solely motivated by his own personal gratification and not even in part by the Clinic’s purpose forecloses the conclusion that he was acting within the scope of his employment.[4]
The plaintiffs contend that the district court was compelled to conclude to the contrary because the assaults occurred at the VA office during scheduled appointments while Dr. Vagshenian was purportedly providing treatment. They cite no evidence that Dr. Vagshenian considered his sexual advances to be a legitimate form of treatment. They rely instead on the cases of several other jurisdictions, beginning with Benavidez v. United States, 177 F.3d 927 (10th Cir.1999).
Benavidez alleged that Dr. Bullís, his government-employed psychologist, “used therapy sessions to convince [him] that he was a homosexual and that he should have sex with Bullís.” Id. at 928. The Tenth Circuit held that Benavidez’s claim was not barred by the assault and battery exception to the FTCA’s waiver of sovereign immunity. Id. at 932. The court assumed without deciding, however, “that Bullís acted within the course and scope of his employment as a government psychologist.” Id. at 928 n. 2. Benavidez is therefore, not contrary to the district court’s conclusion that Dr. Vagshenian acted outside the scope of his employment.
The plaintiffs next rely on the Ninth Circuit’s decision in Simmons v. United States, 805 F.2d 1363 (9th Cir.1986), which, applying Washington law, deferred to the trial court’s finding that a psychiatrist’s sexual involvement with his client was in the scope of his employment. Id. at 1371. Simmons has subsequently been criticized as a misapplication of Washington state law. Thompson v. Everett Clinic, 71 Wash.App. 548, 860 P.2d 1054, 1058 (1993). In Thompson, a patient of a doctor who had sexually abused him during a medical exam sued the medical clinic for which the doctor worked under a theory of responde-at superior. The trial court granted summary judgment for the defendant, and the court of appeals affirmed. Thompson rejected Simmons and held that the better view of Washington law is that an employer will not be held liable as a matter of law merely because “the employment situation provided the opportunity for the servant’s *487 wrongful acts or the means to carry them out.” Id. (emphasis omitted) (quoting Kuehn v. White, 24 Wash.App. 274, 600 P.2d 679, 682 (1979)); see also LaValley v. Ritchie, 42251-1-1, 95 Wash.App. 1052, 1999 WL 359098, at *2 (Wash.App. May 24, 1999) (unpublished) (noting that the court had expressly rejected Simmons). Like the district court in this case, the Thompson court observed that “[t]he assault emanated from [the doctor’s] wholly personal motives for sexual gratification. There is no reason the assaultive act can be considered to have been done in furtherance of the Clinic’s business, or cloaked with some apparent authority.” Thompson, 860 P.2d at 1058. Simmons is therefore not a persuasive reading of either Texas or Washington state law.[5]
Andrews v. United States, 732 F.2d 366 (4th Cir.1984), bolsters this conclusion. In Andrews, the district court found that the plaintiffs counselor persuaded her that the best course of treatment for her depression was to have an affair with him, id. at 368, and that the counselor was acting within the scope of his employment under South Carolina law, id. at 370. The Fourth Circuit reversed, holding that it was “clear” that the counselor was acting solely in his own interest when he seduced the plaintiff. Id.
The plaintiffs have, therefore, not demonstrated that the district court’s finding that Dr. Vagshenian’s tortious conduct was not motivated to an appreciable extent by the VA’s purposes was clearly erroneous or that the court misapplied Texas law.
B
The plaintiffs next challenge the district court’s dismissal of their negligence claims based on the United States’ failure to protect them from Dr. Vagshenian’s assaults. In support of these claims, the plaintiffs presented evidence that VA officials had received prior complaints that Dr. Vagshenian had sexually abused patients. They nevertheless permitted Dr. Vagshenian to continue his work. There is no dispute that Dr. Vagshenian’s coworkers were acting within the scope of their employment when they failed to intervene.
The plaintiffs argue that the district court erred in holding that their claims that Dr. Vagshenian’s coworkers were negligent in not detecting and preventing the sexual assaults fell within the exception to the FTCA’s waiver of sovereign immunity for “[a]ny claim arising out of assault [or] battery.” 28 U.S.C. § 2680(h). The district court concluded that the plaintiffs’ negligence claims against the United States arose out of Dr. Vagshenian’s assault and were therefore barred.
In Block v. Neal, 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983), the Supreme Court considered what it means for a claim to arise out of a misrepresentation — a tort *488 listed in § 2680(h). Neal sued the Farmers Home Administration, a division of the Department of Agriculture, for its failure to properly perform its voluntarily undertaken duty to supervise construction of her house. The United States argued that Neal’s claims arose out of a misrepresentation — i.e., the negligent failure to disclose defects in the construction — and were barred by § 2680(h). The Supreme Court disagreed. It held that the “misrepresentation exception” did “not bar negligence actions which focus not on the FHA’s failure to use due care in communicating information, but rather on the Government’s breach of a different duty.” Id. at 297, 103 S.Ct. 1089.
In United States v. Shearer, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), the Supreme Court considered whether a claim of negligent supervision that stemmed from a federal employee’s assault was barred by § 2680(h). Shearer had been kidnaped and murdered by an Army private. Id. at 53, 105 S.Ct. 3039. The administratrix of his estate alleged that the United States was liable for negligently failing to exercise a reasonable degree of control over the private and failing to warn others of his criminal past. Id. at 54, 105 S.Ct. 3039. A plurality of the court read § 2680(h) broadly enough to bar claims “that sound in negligence but stem from a battery committed by a Government employee.” Id. at 55, 105 S.Ct. 3039. The plurality observed that the § 2680(h) exception “does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery.” Id. at 55, 105 S.Ct. 3039 (emphasis in original). Accordingly, the plurality concluded that the FTCA does not waive sovereign immunity for negligent supervision claims. Id.
The plaintiffs primarily rely on the Supreme Court’s decision three years later in Sheridan v. United States, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988). In Sheridan, the Court clarified that the intentional tort exception does not bar all negligence claims that are related to an assault or battery committed by a government employee. Sheridan alleged that the United States negligently failed to prevent Carr, an intoxicated off-duty serviceman, from shooting him. Id. at 393-94, 108 S.Ct. 2449. Just prior to the assault, several naval corpsman had attempted but failed to take Carr, who they had found in an obviously intoxicated state brandishing a rifle, to an emergency room. Id. at 395, 108 S.Ct. 2449. The Court distinguished Shearer on the ground that Shearer solely pled a claim of negligent hiring and supervision. Id. at 397, 108 S.Ct. 2449. The United States’ liability in that case would only arise because of the employment relationship with the intentional tortfeasor. Id. In Sheridan’s case, on the other hand, by adopting regulations prohibiting the possession of firearms on the naval base and “voluntarily undertaking to provide care” to Carr, the United States had assumed the responsibility of performing its voluntarily undertaken Good Samaritan duties with reasonable care. Id. at 401, 108 S.Ct. 2449. This basis for liability, the Court stated, was “entirely independent of Carr’s employment status.” Id. The Court concluded that “the mere fact that Carr happened to be an off-duty federal employee should not provide a basis for protecting the Government from liability that would attach if Carr had been an unemployed civilian patient or visitor.... ” Sheridan, 487 U.S. at 402, 108 S.Ct. 2449.
This court has since stated that “Sheridan stands for the principle that negligence claims related to a Government employee’s § 2680(h) intentional tort may proceed where the negligence arises out of an independent, antecedent duty unrelated *489 to the employment relationship between the tortfeasor and the United States.” Leleux v. United States, 178 F.3d 750, 757 (5th Cir.1999). The actual assault “thus serves only to establish the extent of the plaintiffs injury, not to establish the ... breach of duty.” Thigpen v. United States, 800 F.2d 393, 399 n. 10 (4th Cir.1986) (Murnaghan, J., concurring in result). In other words, the plaintiffs can recover only if the United States breached a duty independent of its employment relationship with Dr. Vagshenian.
The plaintiffs contend that the United States has an antecedent duty to protect patients in VA hospitals from reasonably known dangers. Whether the United States owed an independent duty to the plaintiffs is a question of Texas state law. See 28 U.S.C. § 1346(b)(1) (rendering United States liable “in accordance with the law of the place where the act or omission occurred”). Under Texas law, a hospital has a duty to exercise care to safeguard patients from known and reasonably known dangers. Harris v. Harris County Hosp. Dist., 557 S.W.2d 353, 355 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ). This duty extends to taking reasonable steps to prevent assaults by third persons, see Diversicare Gen. Partner, Inc. v. Rubio, 185 S.W.3d 842 (Tex.2005) (discussing malpractice claims based on assaults between patients), and medical staff, see Buck, 130 S.W.3d 285 (discussing claim of assault by neurologist).[6] A provider of psychological services has a heightened duty of care to its patients because of their vulnerability and the resulting special relationship. See Porter v. Nemir, 900 S.W.2d 376 (Tex.App.—Austin 1995, no pet.). Similarly, a possessor of land owes a duty to invitees to protect them from foreseeable assaults on the premises, Lefmark Mgmt. Co. v. Old, 946 S.W.2d 52, 53 (Tex.1997); Charrin v. Methodist Hosp., 432 S.W.2d 572, 574-75 (Tex.Civ.App.—Houston [1st Dist.] 1968, no writ) (hospital patient akin to business invitee for purposes of premises liability). These theories of liability do not depend on the employment status of the assailant. The United States could be held liable whether the plaintiffs were sexually assaulted by its employee or a third-party tortfeasor.[7]
*490 Other courts are in agreement with this reasoning. In Bembenista v. United States, 866 F.2d 493 (D.C.Cir.1989), the plaintiff alleged that she was sexually assaulted by a medical technician while a patient at an Army medical center. Id. at 495. The District of Columbia Circuit reversed the district court’s dismissal of her claim based on a breach of a special duty of protective care owed to hospital patients. The court reasoned that the hospital owed a duty to its patients to protect them from sexual abuse by employees and third parties alike. Id. at 498. This duty arose out of the special relationship between the plaintiff and the hospital, not the hospital and its employee. Id. at 498. The duty that the United States allegedly breached, therefore, was not one that stemmed from the employment relationship with the assailant.
Similarly, in Gess v. United States, 952 F.Supp. 1529 (M.D.Ala.1996), the plaintiffs presented evidence that a medical technician at an Air Force hospital had poisoned new born babies. Id. at 1532. The plaintiffs claimed that the hospital breached the duty of care it owed to the plaintiffs in assigning the poisoner to the nursery; failing to adhere to regulations on quality assurance, documentation, and supervision; and failing to identify the cause of the plaintiffs’ injuries and prevent recurrence. Id. at 1550. The court reasoned that § 2680(h) did not bar this claim because under Alabama law, the hospital owed an independent duty to exercise reasonable care to protect its patients from foreseeable criminal acts of third parties. Id. at 1551.[8]
Finally, in Matsko v. United States, 372 F.3d 556 (3d Cir.2004), the plaintiff was invited to a meeting at a Federal Mine Safety and Health Administration office where he was assaulted by a federal employee while other federal employees looked on. Id. at 557. The plaintiff sued, alleging that his assailant’s supervisors and coworkers undertook a duty to protect him as a business invitee. Id. at 560-61. The district court dismissed the claim, but the Third Circuit reversed, citing Sheridan for the proposition that “[t]he fact that a government employee acting outside scope of his employment committed an injurious assault or battery will not preclude liability against the government for negligently allowing the assault to occur.” Id. at 560. The duty to protect business invitees was “entirely separate from any respondeat superior claim for [the assailant’s] actions.” Id. at 561.[9]
*491 We therefore hold that the district court erred in dismissing for lack of jurisdiction the plaintiffs’ claims based on Dr. Vagshe-nian’s coworkers’ independent acts of negligence in failing to prevent the sexual assaults.
Ill
For the foregoing reasons, we AFFIRM the judgment of the district court in part, REVERSE in part, and REMAND for proceedings consistent with this opinion.

. Dr. Vagshenian was subsequently convicted of misdemeanor assault in connection with these allegations.

. These findings are supported by the testimony of the plaintiffs' expert witness, Dr. Gu-theil, who opined that Dr. Vagshenian was not acting in furtherance of VA business, but instead out of "personal animus or personal motives or for personal pleasure” when he sexually assaulted the plaintiffs.

. The United States does not contend that Dr. Vagshenian was an independent contractor and therefore not a federal employee.

. See Green v. Ransor, Inc., 175 S.W.3d 513 (Tex.App.—Fort Worth 2005, no pet.) (employer not liable under a theory of respondeat superior for employee’s negligent drunken driving where the employee's drinking violated company policy and was solely for his own interest); Arbelaez v. Just Brakes Corp., 149 S.W.3d 717, 720 n. 4, 722 (Tex.App.—Austin 2004, no pet.) (applying requirement of Restatement (Second) Agency § 235 that court look to negligent employee's state of mind in determining whether conduct was actuated by intent to serve employer); G.T. Mgmt., Inc. v. Gonzalez, 106 S.W.3d 880, 884 (Tex.App.—Dallas 2003, no pet.) (vicarious liability for intentional tort appropriate "when the act, although not specifically authorized by the employer, is closely connected with the employee’s authorized duties, that is, if the intentional tort is committed in the accomplishment of a duty entrusted to the employee, rather than because of personal animosity”); Ralph v. Mr. Paul’s Shoes, Inc., 572 S.W.2d 812, 816 (Tex.Civ.App.—Corpus Christi 1978, writ ref’d n.r.e.) ("Only if the servant steps aside from the master's business for some purpose wholly disconnected with his employment will the relation of master and servant be suspended.”); Restatement (Second) Agency § 228(a)(c) (requiring that tort be actuated "at least in part, by a purpose to serve the master”); Restatement (Second) Agency § 235 cmt. a ("It is the state of the servant's mind which is material. Its external manifestations are important only as evidence. Conduct is within the scope of employment only if the servant is actuated to some extent by an intent to serve his master.”).

. The remaining cases the plaintiffs cite in a footnote are similarly unpersuasive. Doe v. Samaritan Counseling Center, 791 P.2d 344, 347 (Alaska 1990), Ray v. Value Behavioral Health, Inc., 967 F.Supp. 417 (D.Nev.1997), and Marston v. Minneapolis Clinic of Psychiatry and Neurology, 329 N.W.2d 306, 311 (Minn.1982), each declined to apply the Restatement’s requirement that respondeat superior liability not be imposed unless the employee’s conduct was motivated in part by a desire to serve the employer. Texas law still follows the requirement of Restatement (Second) of Agency §§ 228 and 235 that the employer's business must actuate the servant to some appreciable extent before vicarious liability is imposed and that the employee’s motivation is determinative. See supra note 4. Finally, St. Paul Fire & Marine Insurance Co. v. Asbury, 149 Ariz. 565, 720 P.2d 540 (App.1986), concerned the interpretation of the phrase "professional services” as used in an insurance contract. Id. at 566, 720 P.2d 540. The case did not address the concept of vicarious liability.

. The United States contends that this duty does not extend to adult males who are in “full control of their faculties.” We find no support for this proposition. The capabilities of the patient may bear on the precautions reasonably necessary to protect him, but not the existence of the duty. See Harris, 557 S.W.2d at 355 ("In determining whether the hospital exercised reasonable care in the instant case, it was appropriate for the jury to consider ... the peculiar mental traits of the patient.”).

. We pause to note what this case does not concern. Because the plaintiffs have identified a duty independent of the United States' employment relationship with Dr. Vagsheni-an, this is not a case where the plaintiff seeks to recover from the United States merely because the assailant happens to be on the federal payroll. Cf. Leleux, 178 F.3d at 758 (claim that United States negligently supervised federal employee is barred, absent any allegations of an independent, antecedent duty unrelated to the employment relationship). For the same reason, we need not express an opinion as to whether a claim of negligent supervision would be barred by § 2680(h). Nor does this case involve the application of Texas Occupational Code § 160.010(b), which provides for immunity for non-malicious acts taken in the course of medical peer review. The United States has neither pled nor briefed that affirmative defense. See Dallas County Med. Soc'y v. Ubinas Brache, 68 S.W.3d 31, 38 (Tex.App.—Dallas 2001, pet denied) (§ 160.010 immunity is a defense that ordinarily must be pled); see Keszler v. Mem’l Med. Cent. of E. Tex., 105 S.W.3d 122, 128 (Tex.App.—Corpus Christi 2003, no pet.) (characterizing § 160.010 as an affirmative defense).

. See also Thigpen, 800 F.2d at 399 (Murnaghan, J., concurring) (court has jurisdiction over claim based on hospital's breach of duty to protect patients from assaults by third parties). But see Acosta v. United States, 207 F.Supp.2d 1365, 1369 (S.D.Fla.2001) (barring premises liability claim and stating, "Sheridan does not apply, however, where an allegedly foreseeable battery was only foreseeable to the Defendant because it happened to be the assailant’s employer.”); Bajkowski v. United States, 787 F.Supp. 539, 541-42 (E.D.N.C.1991) (barring negligent hiring claim where United States' breach of duty is due to knowledge of assailant’s propensity for violence gained only through employment relationship).

. See also Strange v. United States, 114 F.3d 1189 (6th Cir.1997) (table decision) (holding that court had jurisdiction over claim of premises liability stemming from postmaster’s sexual assault on postal customers on postal property); Sandoval v. United States, 980 F.2d 1057, 1059 (5th Cir.1993) (district court erred in dismissing as frivolous claim that the United States negligently incarcerated the plaintiff resulting in his assault by fellow inmate); Hallett v. United States Dept, of Navy, 850 F.Supp. 874 (D.Nev.1994) (holding that court had jurisdiction over claim of premises liability stemming from assault by Naval officers at Tailhook Convention). But see Pottle v. United States, 918 F.Supp. 843, 850 (D.NJ.1996) (declining to permit a claim of premises liability reasoning, "Every day, across the coun- *491 tty, thousands of federal employees interact with millions of citizens on government premises .... If the Court held that the government was subject to suit in such cases, it would overstep the bounds of the sovereign immunity waiver....”).